UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

GYM DOOR REPAIRS, INC. and SAFEPATH
SYSTEMS LLC,

                    Plaintiff,                      12 Civ. 7387

     -against-                                      OPINION

NEW YORK CITY DEPARTMENT OF EDUCATION,
DENNIS M. WALCOTT, as Chancellor of the
New York City Department of Education,
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, THE BOARD OF TRUSTEES OF THE
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, THE CITY OF NEW YORK,
JOHN T. SHEA, as chief Executive Officer
of New York City Department of
Education Division of School Facilities,
VOLKERT BRAREN, as Director of Program
Management of NYCDOE, CHRIS COYLE, as
Construction Project Manager of New York
City Department of Education,
CHRIS D'ALIMONTE, as Borough Contract
Manager of New York City Department of
Education, THOMAS FANIZZI, as Manhattan
Maintenance Planner of New York City
Department of Education and Division of
School Facilities and JOHN DOE NUMBERS 1
through 5, whose names are not presently
unknown, as agents, servants and employees
of THE CITY OF NEW YORK,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiffs

          TARTER KRINSKY & DROGIN LLP
          1350 Broadway, 11th Floor
          New York, NY 10018

```
By:  Eric Su, Esq.
     Lisa M. McIntyre, Esq.
     Eva M. Young, Esq.
```

<u>Attorneys for Defendants</u>

```
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street, Room 5-180
New York, NY 10007
```

```
By:  Scott Glotzer, Esq.
```

Defendants the City of New York (the "City"), New York City Department of Education ("NYCDOC"), Dennis M. Walcott, New York City School Construction Authority ("NYCSCA"), Board of Trustees of the New York City School Construction Authority, John T. Shea, Volkert Braren, Chris Coyle, Chris D'Alimonte and Thomas Fanizzi, and John Doe Numbers 1 through 5 (the "Individual Defendants", and collectively "Defendants"), have moved to dismiss the complaint of plaintiffs Gym Door Repairs, Inc. ("GDRI") and Safepath Systems LLC ("SSL" and collectively, the "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). Upon the conclusions set forth below, the motion is granted.

## Prior Proceedings

The Plaintiffs filed a complaint (the "Complaint") on October 2, 2012 in which they asserted claims under 42 U.S.C. § 1983 ("§1983") arising from, *inter alia*, the alleged deprivation of a protectable property interest without due process.  On December 31, 2012, the Defendants moved to dismiss the Complaint.  The motion was heard and marked fully submitted on March 13, 2013.

**The Facts**

In 2001, the New York State legislature enacted
Education Law § 409-f (the "Statute") in response to the death
of two students resulting from accidents involving electrically
operated partitions used in school gyms.  Compl. ¶ 15.  The
Statute mandated that

> Every electrically operated partition or
> room divider shall be equipped with safety
> devices which, subject to standards
> established in rules and regulations
> promulgated by the commissioner, stop the
> forward motion of the partition or room
> divider . . . when a body passes between the
> leading panel of such divider and a wall, or
> when a body is in the stacking area of such
> partition or divider.

N.Y. Educ. L. § 409-f.

In furtherance of the Statute, the New York State
Education Department promulgated and implemented Commissioner's
Regulation § 155.25 (the "Regulation"), which required, *inter
alia*, that the safety equipment installed pursuant to the Statue
"shall not be tampered with, overridden or by-passed" and "must
be maintained in accordance with the manufacturer's

4

instructions, including the manufacturer's recommended service
interval . . . ."  Compl. ¶ 17.

     Plaintiffs are manufacturers, installers and service
contractors of safety system called the Safepath System ("SPS"
or the "System"), which is designed to prevent accidents
involving electrically operated partition doors.  In or around
2007, defendant NYCSCA, which is responsible for ensuring the
safety of New York City's school facilities, issued the New York
City School Construction Authority Manual (the
"Specifications"), which set forth details and instructions
regarding the design, construction and maintenance of
electrically operated partitions in the City's schools.  Section
4(a) of the Specifications mandated that "[t]he infra-red safety
detection system shall be "Safe-Path" as manufactured by [GDRI]
. . . ."

     According to Plaintiffs, the combined effect of the
Statute, the Regulation and the Specifications is to require the
City's schools to utilize Plaintiffs' Safepath System on all
electrically operated partition doors subject to the Statute,
and to utilize Plaintiffs' services to install, service, repair
and maintain the System, and to train and certify maintenance

technicians and/or contractors to perform those duties.  Compl.
¶ 39.  Plaintiffs believe that these requirements have the
effect of conveying a property interest to Plaintiffs for all
revenue and business opportunities generated from the labor,
materials and/or services required in order to comply with the
parameters of the Statute, Regulation and Specifications.  Id.

Although there are more than 1,000 electrically
operated partitions that require a safety system pursuant to the
Statute, Plaintiffs have not installed their Safepath System on
more than half of those locations.  Id. ¶¶ 41-44.  Moreover, the
Safepath Systems that have been installed have not been
regularly inspected, services, repaired and/or maintained
exclusively by Plaintiffs.  Id. ¶¶ 45-46.

Beginning in 2004, Plaintiffs repeatedly advised
Defendants concerning their alleged property interest vested by
the Statute, Regulation and Specifications, and demanded that
Defendants adhere to the requirements of these mandates by
exclusively utilizing Plaintiffs' products and services.  Id. ¶¶
48-57.  Defendants rejected these demands.  Id. ¶ 61.

6

After unsuccessfully seeking redress from the New York City Department of Investigations and the New York State Attorney General's Office, in March 2011 Plaintiffs commenced a lawsuit in New York Supreme Court pursuant to N.Y. C.P.L.R. § 78 (the "Article 78 Action") in which they sought to compel Defendants to recognize their alleged property interest and enforce the Defendants' compliance with the Statute and the Regulation.  Id. ¶¶ 63-65.  The New York Supreme Court (the "State Court") ultimately ruled that Plaintiffs lacked standing to bring the Article 78 Action.  Id. ¶ 65.

According to Plaintiffs, Defendants retaliated for the filing of the Article 78 Action by directing contractors engaged by NYCDOE and NYCSCA to perform school construction and improvement work to "never use" Plaintiffs' Safepath System or services on any school-related construction projects.  Id. ¶ 66.

In or about April 2012, references to Plaintiffs and the Safepath System were removed from the Specifications.  Id. ¶ 67.  According to Plaintiffs, Defendants effected this modification of the Specifications in retaliation for Plaintiffs' efforts to enforce compliance with the Statute, Regulation and Specifications.  Id.

7

Plaintiffs thereafter initiated the instant lawsuit, in which they have asserted (i) claims under §1983 for violation of their procedural and substantive due process rights as a result of being deprived of their alleged property interest, (ii) a First Amendment retaliation claim and (iii) a request for injunctive relief requiring Defendants to exclusively use Plaintiffs' products and services in the course of complying with the Statute.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

8

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## The Complaint Fails To State A Claim Under 42 U.S.C. § 1983

Section 1983 "does not itself provide substantive rights, but in fact offers a method for vindicating federal rights elsewhere conferred." Humphrey v. County of Nassau, 2009 U.S. Dist. Lexis 27105, at *58 (E.D.N.Y. Mar. 30, 2009) (internal quotation marks omitted); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); City of Oklahoma City v. Tuttle, 471 U.S, 808, 816 (1985); Baker v. McCollan, 443 U.S. 137, 144 n.3(1979); Sykes v.James, 13 F.3d 515, 519 (2d Cir.

1993); Smart v. City of New York, 2009 U.S. Dist. Lexis 30241,
at *10 (S.D.N.Y. April 1, 2009).  In general, "Section 1983
provides a cause of action for the 'deprivation of any rights,
privileges, or immunities secured by the Constitution and laws'
by any person acting 'under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory.'"
Gomez v. Toledo, 446 U.S. 635, 638 (1980).

It is well settled that "to state a claim under
§ 1983, a plaintiff must allege (1) that the challenged conduct
was attributable at least in part to a person acting under color
of state law, and (2) that such conduct deprived the plaintiff
of a right, privilege, or immunity secured by the Constitution
or laws of the United States."  Roffman v. City of New York,
2002 U.S. Dist. Lexis 23665, at *10 (S.D.N.Y. Dec. 10, 2002);
see also Gomez, 446 U.S. at 640.

Here, Plaintiffs have alleged that Defendants'
conduct, in depriving Plaintiffs of their alleged property
interest in the revenue and business opportunities resulting
from Plaintiffs' purported right to the be the exclusive
supplier and servicer of safety devices for electrically
operated partitions in New York City schools, had the effect of

depriving Plaintiffs of their constitutional rights to
procedural and substantive due process.  As set forth below,
both of these claims fail because Plaintiffs have not
established the existence of the property interest, and
therefore have not alleged a deprivation sufficient to support a
§1983 claim.

A.  *The Complaint Fails To Allege A Violation of Plaintiffs'
Right to Procedural Due Process*

The constitutional right to procedural due process
requires that a deprivation of life, liberty, or property be
preceded by notice and an opportunity to be heard. Mullane v.
Central Hanover Bank & Trust, 339 U.S. 306,313 (1950).

Whether an individual's procedural due process rights
have been denied rests on whether that person has been deprived
of a liberty or property interest subject to due process
protection. Board of Regents v. Roth, 408 U.S. 564, 569-72
(1972).  The Supreme Court has explained that a property
interest in a benefit requires "more than an abstract need or
desire for it" and more than a "unilateral expectation" of
receiving the benefit. Id. at 577.  In order to serve as the
basis for a procedural due process claim, an individual must

11

have a "legitimate claim of entitlement" to the benefit at issue.  Id.  The universe of property rights subject to due process protections "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Story v. Green, 978 F.2d 60, 62 (2d Cir. 1992).  Accordingly, a subjective hope or expectation that a benefit will subsequently issue is not the type of interest that triggers due process protection.  Roth, 408 U.S. at 577.

In order to make out a cause of action for denial of procedural due process, a plaintiff must "first identify a property right, second show that the State has deprived him of that right, and third show that the deprivation was effected without due process."  Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191 1194 (2d Cir. 1994), (quoting Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)).  "The burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way," i.e., without due process of law.  All Aire Conditioning, Inc. v. City of New York, 979 F. Supp. 1010, 1018 (S.D.N.Y. 1997), aff'd, 166 F.2d 1199 (2d Cir. 1998).

12

Under the New York State public bidding laws:
"[n]either the low bidder nor any other bidder has a vested
property interest in a public contract . . . ." Conduit &
Foundation Corp. v. Metropolitan Transport Authority, 66 N.Y.2d
144, 148-49, (1985) (citations omitted); see also John Gil
Construction, Inc. v. Riverso, 72 F. Supp.2d 242, 252 (S.D.N.Y.
1999); Schiavone Construction Co. v. La Rocca, 117 A.D.2d 440,
443 (3d Dep't 1986); Callanan Indust. v. County of Schenectady,
116 A.D.2d 883, 884 (3d Dep't 1986); Eastway Construction Corp.
v. City of New York, 762 F.2d 243, 250 (2d Cir. 1985)
(involvement in publicly financed project does not rise to level
of property interest).

Moreover, the Complaint has not alleged any
contractual rights as against Defendants. Plaintiffs perform
specialty work under sub-contracts with the Job Order
Contractors ("JOC"). Compl. ¶¶ 53, 66. As subcontractors,
Plaintiffs lack privity of contract with Defendants, and are
thus precluded from bringing suit against Defendants. Barry,
Bette & Led Duke, Inc. v. State of New York, 240 A.D.2d 54, 56
(3d Dep't 1998); Travelers Cas. & Sur. Co. v. Dormitory Auth.,
735 F. Supp.2d 42, 69 (S.D.N.Y. 2010).

In addition, absent an intent to benefit a subcontractor that is expressly stated in the prime contract, a subcontractor is not a third-party beneficiary. Port Chester Electrical Construction Corp. v. Atlas, 40 N.Y.2d 652, 656 (1976); Faist v. Garslip Construction Corp., 220 A.D.2d 718, 719 (2nd Dep't 1995); Artwear, Inc. v. Hughes, 202 A.D.2d 76, 84 (1st Dep't 1994); Board of Managers of the Riverview at College Point Condominium III, 182 A.D.2d 664,665 (2d Dep't 1992); 156 A.D.2d 550, 551 (2d Dep't 1989); Arrow Louver & Damper v. New York City, Transit Auth., 106 A.D.2d 533, 534 (2d Dep't 1984). Further, the incorporation into a subcontract of construction specifications and other requirements of a prime contract does not vest any rights in a subcontractor against an owner. Port Chester Electric Construction Co. v. Atlas, supra, 40 N.Y.2d at 656; S. Leo Harmonay, Inc. v. Binks Manufacturing Co., 597 F. Supp. 1014, 1024-1026 (S.D.N.Y. 1984) aff'd without op., 1985 U.S. App. Lexis 26713 (2d Cir. March 5, 1985); Lodges 743 and 1746, etc. v. United Aircraft, 534 F.2d 422, 441 (2d Cir. 1975).

Here, Article 58A of DOE's general contract specifically disclaims any relationship between itself and any subcontractor, providing that nothing in either the general

14

contract or any sub-contract entered into by the general

contractor will create any contractual relationship between the

subcontractor and DOE.  See Declaration of Scott Glotzer in

Support of City Defendants' Motion to Dismiss ("Glotzer Decl.")

¶ 10 & Exhibit E.


        The Complaint has also failed to establish that

Plaintiffs have a right to be awarded a public contract or to

subcontract on a public contract. In cases of contracting,

government officials have a "significant discretion" over "the

continued conferral of [a] benefit, [and thus] it will be rare

that the recipient will be able to establish an entitlement to

that benefit."  Kelly Kare Ltd. v. O'Rourke, 930 F.2d 170, 175

(2d Cir. 1991); see also Town of Castle Rock v. Gonzales, 545

U.S. 748, 756 (2005); RR Village Ass'n, Inc. v. Denver Sewer

Corp., 826 F.2d 1197, 1202 (2d Cir. 1987).  Moreover, Under New

York law, DOE may only award contracts to the lowest responsible

bidder.  GML § 103, Educ. Law §§ 2556(10), 2556(10-a).


        In the face of these well-established norms and laws

regarding the awarding of government contracts, the mere fact

that Plaintiffs unilaterally inserted language in their own

maintenance instructions that expressly preclude anyone other

15

than Plaintiffs from performing the maintenance, see Compl. ¶ 38, cannot have the effect of requiring Defendants to enter into a sole-source relationship with Plaintiffs. Accordingly, the language in the Regulation requiring that "[a]ll equipment must be maintained in accordance with the manufacturer's instructions" must be understood as mandating conformity with the *methods and procedures* prescribed by the manufacturer, rather than commanding that the manufacturer be vested with the power to determine vendor selection. See Dairymen's League Co-op Ass'n v. Brannan, 173 F.2d 57, 66 (2d Cir. 1949) (holding that "when alternative interpretations [of an administrative regulation] are possible, the more reasonable of the two is to be chosen . . .").

Lastly, even assuming, *arguendo*, that Plaintiffs have somehow alleged a protectable property right, they have still failed to allege a deprivation of such right without procedural due process, given that Plaintiffs had the opportunity to pursue Article 78 review. See Beechwood Restorative Care Center, et al. v. Leeds, et al., 436 F.3d 147, 156 (2d Cir. 2006) (holding that "[a]n Article 78 proceeding . . . afford[s] a meaningful post-deprivation remedy" that obviates a claim for due process violation); C.A.U.T.I.O.N., Ltd. v. City of New York, 898 F.

16

Supp. 1065, 1074-75 (S.D.N.Y. 1995); Hudson v. Palmer, 468 U.S. 517, 533 (1984).


B.  *The Complaint Fails To Allege A Violation of Plaintiffs'*
*Right to Substantive Due Process*


        "To establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."' Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005), citing County of Sacramento v. Lewis, 523 U.S. 833, 847 (1995)). The Court of Appeals for the Second Circuit has repeatedly stated that "in order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity....'" Lombardi v. Whitman, 485 F.3d 73, 81-82 (2d Cir. 2007), quoting Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973); Kshel Realty Corp. v. City of New York, 2006 U.S. Dist. Lexis 62220 at *30 (S.D.N.Y. Aug. 30, 2006); aff'd, 293 Fed. Appx. 13 (2d Cir. 2008). (Government action must be "arbitrary,

17

conscience-shocking, or oppressive in a constitutional sense,"
not merely "incorrect or ill-advised").

Moreover, the governmental action must be the product
of an improper motive unrelated to a legitimate governmental
purpose, "Only a substantial infringement of state law prompted
by personal or group animus, or a deliberate flouting of the law
that trammels significant personal, or property rights,
qualifie[s] for relief' under the doctrine of substantive due
process. Natale v. Town of Ridgefield, 170 F.3d 258,263 (2d Cir.
1999) (citation omitted); Heath v. Henning, 854 F.2d 6, 9 (2d
Cir. 1988) (contrasting Fourth Amendment standard of objective
reasonableness with substantive due process standard requiring
improper motive).

In addition, contractual rights, by themselves, will
not support a substantive due process claim since "simple state-
law contractual rights, without more, are [not] worthy of
substantive due process protection." Local 342. L.I. Public
Service Employees, 31 F.3d at 1196; Russell Pipe & Foundry Co.
v. City of New York, 1997 U.S. Lexis 1970 at *30 (S.D.N.Y. Feb.
21, 1997).

18

In the instant case, the Complaint does not identify
any contract or sub-contract that was revoked, denied, or on
which Plaintiffs received a declaration of default, a finding of
non-responsibility, or a negative evaluation, or any other type
of conduct that could possibly be construed as "shocking the
conscience."  Rather, the Complaint has merely alleged
Plaintiffs were deprived of a right to be sole source suppliers
and servicers of electrically operated partition doors and to be
listed in perpetuity as such in the SCA's specifications, Compl.
¶¶ 53, 61, 66, 67 ,74,80, 81, which is a right that Plaintiffs
did not in fact possess. See supra § A.  Accordingly, Plaintiffs
have not alleged a substantive due process violation.


**The Complaint Has Not Stated A Claim For First Amendment
Retaliation**


        To prevail on a claim for First Amendment retaliation,
a plaintiff must demonstrate: (i) that his speech addressed a
matter of public concern; (ii) that he suffered an adverse
action; and (iii) the existence of a causal connection between
the speech and the adverse action indicating that the speech was
a motivating factor for the adverse action.  Cobb v. Pozzi,352
F.3d 79,91 (2d Cir. 2003); Mandell v. County of Suffolk, 316

F.3d 368,382 (2d Cir. 2003); Reckson Operating Partnership v.
New York State Urban Development Corporation, 2006 U.S. Dist.
Lexis 49269 at *12 (S.D.N.Y. July 12, 2006); Ruotolo v. City of
New York, 2006 U.S. Dist. Lexis 49903 at *15 (S.D.N.Y. July 19,
2006).


       To satisfy the third element of their retaliation
claim, Plaintiffs have alleged that their speech - *i.e.*, their
complaints to Defendants and filing of the Article 78 Action -
resulted in the adverse action of Defendants depriving
Plaintiffs of their property interest in the revenue and
business opportunities resulting from installation and servicing
of the safety systems required by the Statute.  However, as set
forth above, Plaintiffs have no such property interest, and
therefore have failed to adequately allege the third element of
their retaliation claim, which is fatal to their First Amendment
retaliation claim.  See Kuck v. Danaher, 600 F.3d 159, 167-68
(2d Cir. 2010).


**Plaintiffs' Request For Injunctive Relief Is Denied**


       Under Second Circuit law, an injunction is properly
granted when the plaintiff shows "(a) irreparable harm and (b)

20

either (1) likelihood of success on the merits or (2)
sufficiently serious questions going to the merits to make them
a fair ground for litigation and a balance of hardships tipping
decidedly toward the party requesting preliminary relief."
Citigroup Global Mkts., Inc. v. VGS Special Opportunities Master
Fund, Ltd._, 598 F.3d 30, 35 (2d Cir. 2010) (quoting Jackson
Dairy, Inc. v. H.P. Hood & Songs, Inc., 596 F.2d 70, 72 (2d Cir.
1979)).

        Plaintiffs have alleged that they are entitled to
injunctive relief because Defendants' are depriving them of
their property interest granted by the Statute, Regulation and
Specifications.  Compl. ¶¶ 92-93.  As set forth above,
Plaintiffs have no such property interest; accordingly, they
have failed to allege an irreparable harm, which is fatal to
their request for relief.  See Faiveley Transport Malmo AB v.
Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).

**Conclusion**

       Upon the conclusions set forth above, Plaintiffs'
request for injunctive relief is denied, and Defendants' motion
to dismiss the Complaint is granted with leave given to replead
within twenty days.[1]


       It is so ordered.

New York, NY
September  5  , 2013

                           ROBERT W. SWEET
                               U.S.D.J.

---

[1] Since Plaintiffs' claims fail on the merits, there is no need
to address Defendants' alternative arguments.