UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

GYM DOOR REPAIRS, INC. and SAFEPATH
SYSTEMS LLC,

                        Plaintiff,                12 Civ. 7387

   -against-                          OPINION

NEW YORK CITY DEPARTMENT OF EDUCATION,
DENNIS M. WALCOTT, as Chancellor of the
New York City Department of Education,
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, THE BOARD OF TRUSTEES OF THE
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, THE CITY OF NEW YORK,
JOHN T. SHEA, as chief Executive Officer
of New York City Department of
Education Division of School Facilities,
VOLKERT BRAREN, as Director of Program
Management of NYCDOE, CHRIS COYLE, as
Construction Project Manager of New York
City Department of Education,
CHRIS D'ALIMONTE, as Borough Contract
Manager of New York City Department of
Education, THOMAS FANIZZI, as Manhattan
Maintenance Planner of New York City
Department of Education and Division of
School Facilities and JOHN DOE NUMBERS 1
through 5, whose names are not presently
unknown, as agents, servants and employees
of THE CITY OF NEW YORK,

                      Defendants.

------------------------------------------X

A P P E A R A N C E S :

        Attorneys for Plaintiffs

        CALCAGNI & KANEFSKY, THE NEW JERSEY OFFICE OF HARRIS,
        O'BRIEN, ST. LAURENT & CHAUDHRY, LLP
        One Newark Center

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 3 14

1085 Raymond Blvd. 14th Floor
Newark, NJ 07102
By:  Eric T. Kanefsky, Esq.


Attorneys for Defendants

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street, Room 5-180
New York, NY 10007

By:  Scott Glotzer, Esq.

**Sweet, D.J.**

Defendants, New York City Department of Education
("DOE"), New York City School Construction Authority ("NYCSCA"),
The City of New York ("City" and collectively "Municipal
Defendants"), and The Board of Trustees of NYCSCA, Dennis M.
Walcott, John T. Shea, Volkert Braren, Chris Coyle, Chris
D'Alimonte, Thomas Fanizzi, as employees of DOE (sued only in
their official capacities) ("Individual Defendants" and,
together with Municipal Defendants, "Defendants"), have moved
for Judgment on the Pleadings with respect to the complaint
("Complaint") of plaintiffs Gym Door Repairs, Inc. ("GDRI") and
Safepath Systems LLC ("SSL" and collectively, "Plaintiffs"), on
the grounds that Plaintiffs have not alleged the existence of an
unconstitutional municipal policy, that the lack of a
preexisting commercial relationship between Plaintiffs and

2

Defendants bars Plaintiffs' First Amendment retaliation claim, and that the basis for injunctive relief has not been established, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Upon the conclusions set forth below, the motion is granted.

**Prior Proceedings**

Plaintiffs filed this Section 1983 action on October 1, 2012, seeking compensatory damages and injunctive relief for the deprivation of Plaintiffs' procedural due process, substantive due process, and First Amendment rights.  Upon the Defendants' motion to dismiss, this Court dismissed the Complaint on September 10, 2013.  Plaintiffs appealed and, by Summary Order dated April 30, 2014, the Second Circuit affirmed the District Court's dismissal of the procedural and substantive due process claims, and vacated the dismissal of Plaintiffs' First Amendment retaliation claim.  See Safepath Sys. LLC v. New York City Dep't of Educ., 563 F. App'x 851, 855 (2d Cir. 2014). The Second Circuit remanded for further consideration of Plaintiffs' claim for injunctive relief.  See id. at *857.

The Complaint sets forth the following allegations: In 2001, the New York State legislature enacted Education Law § 409-f (the "Statute") in response to the death of two students resulting from accidents involving electrically operated partitions used in school gyms. Compl. ¶ 15. The Statute mandated that

> Every electrically operated partition or room divider shall be equipped with safety devices which, subject to standards established in rules and regulations promulgated by the commissioner, stop the forward motion of the partition or room divider . . . when a body passes between the leading panel of such divider and a wall, or when a body is in the stacking area of such partition or divider.

N.Y. Educ. L. § 409-f.

In furtherance of the Statute, the New York State Education Department promulgated and implemented Commissioner's Regulation § 155.25 (the "Regulation"), which required, inter alia, that the safety equipment installed pursuant to the Statue "shall not be tampered with, overridden or by-passed" and "must be maintained in accordance with the manufacturer's instructions, including the manufacturer's recommended service interval . . . ." Compl. ¶ 17.

Plaintiffs are manufacturers, installers and service contractors of a door safety system called the Safepath System ("SPS" or the "System"), which is designed to prevent accidents involving electrically operated partition doors. In or around 2007, NYCSCA, which is responsible for ensuring the safety of New York City's school facilities, issued the New York City School Construction Authority Manual (the "Specifications"), setting forth details and instructions regarding the design, construction and maintenance of electrically operated partitions in the City's schools. Section 4(a) of the Specifications mandated that "[t]he infra-red safety detection system shall be "Safe-Path" as manufactured by [GDRI] . . . ."

Although there are more than 1,000 electrically operated partitions that require a door safety system pursuant to the Statute, Plaintiffs have not installed their Safepath System in more than half of those locations. Id. ¶¶ 41-44. Moreover, the Safepath Systems that have been installed have not been regularly inspected, serviced, repaired and/or maintained exclusively by Plaintiffs. Id. ¶¶ 45-46.

Beginning in 2004, Plaintiffs repeatedly advised Defendants concerning their alleged property interest vested by the Statute, Regulation and Specifications, and demanded that Defendants adhere to the requirements of these mandates by exclusively utilizing Plaintiffs' products and services.  Id. ¶¶ 48-57.  Defendants rejected these demands.  Id. ¶ 61.

After unsuccessfully seeking redress from the New York City Department of Investigations and the New York State Attorney General's Office, in March 2011 Plaintiffs commenced a lawsuit in New York Supreme Court pursuant to N.Y. C.P.L.R. § 78 (the "Article 78 Action") in which they sought to compel Defendants to recognize their alleged property interest and enforce the Defendants' compliance with the Statute and the Regulation.  Id. ¶¶ 63-65.  The New York Supreme Court (the "State Court") ultimately ruled that Plaintiffs lacked standing to bring the Article 78 Action.  Id. ¶ 65.

According to Plaintiffs, Defendants retaliated for the filing of the Article 78 Action by directing contractors engaged by NYCDOE and NYCSCA to perform school construction and improvement work to "never use" Plaintiffs' Safepath System or services on any school-related construction projects.  Id. ¶ 66.

6

In or about April 2012, references to Plaintiffs and the Safepath System were removed from the Specifications. Id. ¶ 67. According to Plaintiffs, Defendants effected this modification of the Specifications in retaliation for Plaintiffs' efforts to enforce compliance with the Statute, Regulation and Specifications. Id.

Plaintiffs thereafter initiated the instant lawsuit, in which they have asserted Section 1983 claims for violation of their procedural and substantive due process rights as a result of being deprived of their alleged property interest, and for First Amendment retaliation, and requested injunctive relief requiring Defendants to exclusively use Plaintiffs' products and services in the course of complying with the Statute. Following this Court's September 10, 2013 decision on Defendants' motion to dismiss and Plaintiffs' subsequent appeal to the Second Circuit, only the First Amendment claim and request for injunctive relief survive.

The Defendants' instant motion was heard and marked fully submitted on September 17, 2014.

**The Applicable Standard**

In deciding a motion under Rule 12 (c) of the Federal Rules of Civil Procedure for judgment on the pleadings, courts apply "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (internal quotations and citations omitted). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Though the court must accept the factual allegations of a complaint as true, it is

8

"not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Section 1983 "does not itself provide substantive rights, but in fact offers a method for vindicating federal rights elsewhere conferred."  Humphrey v. County of Nassau, 06-CV-3682, 2009 WL 875534, at *17 (E.D.N.Y. Mar. 30, 2009) (internal quotations omitted) (citing Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).  In general, "Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"  Gomez v. Toledo, 446 U.S. 635, 638 (1980).

**The Substantive First Amendment Retaliation Claim Is Adequately Pled**

To prevail on a claim for First Amendment retaliation, a plaintiff must demonstrate: (1) that his speech addressed a

9

matter of public concern; (2) that he suffered an adverse
action; and (3) the existence of a causal connection between the
speech and the adverse action indicating that the speech was a
motivating factor for the adverse action.  Mandell v. County of
Suffolk, 316 F.3d 368,382 (2d Cir. 2003) (internal quotations
omitted).

        The Second Circuit's determination that Plaintiffs
satisfied all three elements of their First Amendment
retaliation claim for the purposes of a motion to dismiss is
equally applicable to the instant motion for judgment on the
pleadings.  Safepath, 563 F. App'x at 857-58; see Ziemba, 366
F.3d at 163 (Rule 12(b)(6) and Rule 12(c) motions are decided
according to the same standard).  Nevertheless, Defendants
contend that Plaintiffs' claim merits dismissal because they
lack a preexisting commercial relationship with Defendants, as
required under Second Circuit law.  See generally, Defs.' Mem.
in Supp. 11-12.

        While independent contractors in a preexisting
commercial relationship with a government entity are afforded
First Amendment protection, the same protection has not been
unequivocally extended to entities without a preexisting

commercial relationship.  See Bd. of Cnty. Comm'rs, Wabaunsee

Cnty., Kan. v. Umbehr, 518 U.S. 668, 685 (1996) (declining to

address the possibility of First Amendment protection for

contractors without a pre-existing commercial relationship);

African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355,

360 (2d Cir. 2002) (same).


          A preexisting commercial relationship encompasses, but

also extends beyond, a contractual relationship.  See Hous.

Works, Inc. v. Giuliani, 56 F. App'x 530, 533 (2d Cir. 2003).

In the absence of a contractual relationship, courts consider

whether there exists "a longstanding relationship" of a

character similar to those described in Umbehr and its companion

case, O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S.

712 (1996).  See Hous. Works, 56 F. App'x at 533.  In Umbehr, a

contractor provided a municipality with trash collection

services pursuant to a renewable six-year service contract,

which the municipality chose to not renew following the

contractor's exercising his First Amendment rights.  See 518

U.S. at 671.  In O'Hare, the contractor was on a list of

approved tow truck operators, from which the municipality

selected this contractor on a rotational basis.  518 U.S. at

715.  The Court in O'Hare found "it sufficient that there was a

[commercial] relationship that, based on longstanding practice, [the plaintiff] had reason to believe would continue." 518 U.S. at 721 (quoted in Hous. Works, Inc., 56 F. App'x at 533).

The Second Circuit in Housing Works similarly concluded that the a preexisting commercial relationship existed where a contractor and a municipality had a longstanding relationship, pursuant to which the municipality entered into numerous contracts with the contractor to receive a number of services from the contractor with respect to the municipality's homeless population. Id. By contrast, the Second Circuit ruled that a preexisting commercial relationship did not exist where consultants who had not previously been retained by a municipality were allegedly removed from the pool of candidates for an upcoming consultancy appointment. African Trade v. Abromaitis, 294 F.3d 355, 358 (2d Cir. 2002); cf. McClintock v. Eichelberger, 169 F.3d 812, 816 (3d Cir. 1999) (an oft-quoted opinion where the Third Circuit held that two discrete contracts between a municipality and a contractor, each for different services, followed by a separate vendor-vendee relationship, did not constitute a preexisting commercial relationship).

12

At the pleadings stage, the relationship between
Plaintiffs and Defendants can be fairly analogized to the
preexisting commercial relationship in O'Hare.  Over the course
of several years, Plaintiffs had provided subcontractor services
to approximately half of Defendants' 1,000 schools.  Prior to
Plaintiff's protected speech, SPS was explicitly referenced in
Defendants' Specifications and Plaintiffs had reason to believe
that they would be eligible subcontractors for door safety
services.  As in O'Hare, Plaintiffs were barred from being
considered as potential contractors by Defendants only following
their protected speech.

Defendants contend that Plaintiffs' injury not only
predated but actually precipitated their protected speech.
Defs.' Reply Mem. 8 (contending that it is the "absence of a
commercial relationship that Plaintiffs complained of").
However, Plaintiffs do not allege that they were banned as
subcontractors prior to their protected speech.  They also do
not allege that SPS had been officially removed from the
Specifications prior to their protected speech.  It is these
retaliatory acts against which Plaintiffs sue.  Plaintiffs "had
reason to believe [their preexisting relationship providing
Defendants with door safety services] would continue," O'Hare,

518 U.S. at 721, which changed only after their protected speech and Defendants' decision to re-write the Specifications and to bar general contractors from hiring Plaintiffs.

Defendants further contend that they lacked privity of contract with Plaintiffs, and therefore, cannot be said to have a commercial relationship. See Defs.' Mem. in Supp. 12. However, assuming Plaintiffs' First Amendment allegations to be true, Defendants in fact determined whether Defendants could be hired as subcontractors by the general contractors with whom Defendants had contractual relationships, which thereby constituted a de facto commercial relationship with Plaintiffs. Thus, the absence of privity is not fatal to Plaintiff's First Amendment retaliation claim.

In short, as the Second Circuit held in considering Plaintiffs' appeal in this case, "although [P]laintiffs are independent contractors rather than public employees, their First Amendment rights are still protected." Safepath, 563 F. App'x at 856.

**The <u>Monell</u> Elements Are Not Met**

In addition to the substantive elements of the First Amendment retaliation claim, Plaintiffs must also satisfy the elements under <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978).  See <u>Friel v. Cnty. of Nassau</u>, 947 F. Supp. 2d 239, 256 (E.D.N.Y. 2013) (conducting a two-tier analysis whereby both the First Amendment retaliation elements and the <u>Monell</u> requirements must be met in a Section 1983 claim); <u>Kilduff v. Rochester City Sch. Dist.</u>, 10-CV-06387, 2014 WL 4659324, at *5-6 (W.D.N.Y. Sept. 16, 2014) (holding that a valid constitutional law claim against a municipality requires both the elements of the claim as well as the <u>Monell</u> requirements to survive a motion to dismiss); <u>cf.</u> <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006) (holding that "[b]ecause the district court properly found no underlying constitutional violation, [it need not] address the municipal defendants' liability under <u>Monell</u>" when dismissing a Section 1983 claim).  As Individual Defendants are sued in their official capacities, the <u>Monell</u> requirements apply equally to them.  <u>Odom v. Kerns</u>, 99 CIV. 10668, 2000 WL 1229849, at *2 (S.D.N.Y. Aug. 29, 2000) (citing <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998) (a "claim against a municipal officer acting in

15

his official capacity is equivalent to a claim against the municipality").

To satisfy Monell: "a plaintiff must . . . show two basic elements: (1) the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officers and (2) a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights." Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (internal quotations and citations omitted).

In order to prove the existence of a policy or custom under Monell, Plaintiffs must sufficiently plead one of the following: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690-91; (2) that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision which caused the alleged violation of Plaintiffs' constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to

16

constitute "custom or usage," and proof that this practice was
so manifest or widespread as to imply the  constructive
acquiescence of policymaking officials, City of St. Louis v.
Praprotnik, 485 U.S. 112, 127-30 (1988) (plurality opinion);
Sorlucco v. New York City Police Dep't, 971 F.2d 864,871 (2d
Cir. 1992); or, if liability is based on a claim of failure to
train or supervise, that (4) "the failure to train amounts to
deliberate indifference to the rights of those with whom
municipal employees will come in contact." City of Canton, 489
U.S. at 388; Walker v. City of New York, 974 F.2d 293, 297-98
(2d Cir. 1992).


        Plaintiffs contend that they satisfy the second Monell
element, i.e., that the Individual Defendants, officials
responsible for establishing final policy with respect to the
subject matter in question, took action or made a specific
decision which caused the alleged violation of Plaintiffs'
constitutional rights.  Pls.' Mem. in Opp'n 10 (contending that
"Defendants . . . are municipal decision-makers possessing final
authority in determining whether Plaintiffs would be debarred
from working in city schools and who had the ability to control
the [S]pecifications.").


                            17

Federal courts do not apply a heightened pleading standard in civil rights cases alleging municipal liability under Section 1983. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). At the pleadings stage, it is sufficient for the complaint to allege facts suggesting that Defendants may be determined to have final policymaking authority as a matter of law. Saenz, 2008 WL 2735867, at *3; see Tekula v. Bayport-Blue Point Sch. Dist., 295 F. Supp. 2d 224, 234 (E.D.N.Y. 2003); see generally Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-236 (1974)) (holding that the issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims). However, even at the pleadings stage, a complaint must contain allegations that the defendant-official had final policy making authority in order to subject the municipality to liability. See Schwab v. Smalls, 435 F. App'x 37, 40 (2d Cir. 2011) (affirming the district court's dismissal of a § 1983 claim where the complaint contained little more than a "vague assertion" that defendants had final policymaking authority). It is ultimately the plaintiff's burden to establish, as a matter of law, "that [an] official had final policymaking

18

authority in the particular area involved . . . . It does not suffice for these purposes that the official has been granted discretion in the performance of his duties.  Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (internal quotations and citations omitted).

Plaintiffs here alleged that all of the Individual Defendants "directed contractors engaged to perform school construction and improvement work . . . to 'never use' Plaintiffs' services."  See Compl. ¶¶ 66; see also Compl. ¶¶ 52, 53, 88.  Plaintiffs further allege that "Defendants" removed SPS from the specifications, but do not actually reference that they had or were acting pursuant to their final policymaking authority.  See Compl. ¶ 67.  Defendants contend that these allegations are insufficient to establish an unconstitutional policy.  Defs.' Mem. in Supp. 8.

Courts in this Circuit have dismissed Monell claims that lack explicit allegations that the officials being sued had final policymaking authority.  See, e.g., Schwab v. Smalls, 435 F. App'x 37, 40 (2d Cir. 2011) (described above); Zherka v. City

19

of New York, N.Y., 08 CV 9005, 2010 WL 4537072, at *4 (S.D.N.Y. Nov. 9, 2010) (dismissing plaintiff's Section 1983 claim for failing to plead "that any official's actions represent official policy") (internal quotations omitted) aff'd sub nom. Zherka v. City of New York, 459 F. App'x 10 (2d Cir. 2012) (affirming dismissal, partly on the basis that the individual official defendants were not themselves officials of the municipal defendants); Canner v. City of Long Beach, 12-CV-2611, 2014 WL 2862791, at *11 (E.D.N.Y. June 23, 2014) (dismissing Section 1983 claim were "plaintiffs do not reference any state law supporting their claim that [the defendant] was a final policymaker"). Where similar claims have survived past the pleadings stage, the complaints contained allegations regarding officials' final policymaking authority. See e.g., Burhans v. County of Putnam, 06 CIV 8325, 2011 WL 1157693, at *7 (S.D.N.Y. Mar. 25, 2011) (denying the motion to dismiss where the complaint alleged final policymaking authority but where neither party meaningfully briefed the issue further); Kempkes v. Downey, 07-CV-1298, 2008 WL 852765, at *8 (S.D.N.Y. Mar. 31, 2008) (same); Pisano v. Mancone, 08 CIV. 1045, 2009 WL 2337131, at *5 (S.D.N.Y. July 30, 2009) (denying motion to dismiss where the complaint alleged that a defendant acted under his authority as Police Chief and where the complaint quoted from employment

termination notices suggesting that the defendant had final rulemaking authority); cf. Adams v. Smith, 07-CV-0452, 2010 WL 3522310, at *12 (N.D.N.Y. Sept. 1, 2010) (denying motion to dismiss where a pro se plaintiff's complaint only alleged that the mayor of a municipality instructed his subordinates to take actions that infringed upon the plaintiff's constitutional rights).

With respect to pleading final policy making authority, the Complaint contains "little more than [the] vague assertion[s]" the Second Circuit deemed inadequate to trigger a municipality's liability under Monell.  Schwab, 435 F. App'x at 40.  No explicit reference is made to the Individual Defendants' having final policymaking authority, no Individual Defendants' authority is described, and no allegation is made regarding whether one or more Individual Defendants exercised their final policymaking authority in causing Plaintiffs' injuries. Therefore, the First Amendment Retaliation Claim brought against Defendants under Section 1983 does not satisfy Monell and is dismissed.

**Plaintiffs' Requests For Injunctive Relief Are Dismissed**

Under Second Circuit law, a plaintiff seeking injunctive relief "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160-61 (2d Cir. 2012) (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)) (internal quotations omitted).

Defendants contend that: there is no irreparable injury since no constitutional right was infringed; that the balance of equities does not favor Plaintiffs; and that the public interest would not be served by granting the injunctive relief sought. Defs.' Mem. in Supp. 13.

As discussed above, Plaintiffs have not adequately pled a constitutional violation against Defendants as required under Monell. Moreover, the balance of hardships and public

interest considerations also militate against granting the

requested injunctive relief.  Plaintiffs seek an injunction that

extends far beyond requiring Defendants to reinstate Plaintiffs

as potential subcontractors and to not further retaliate against

them for their protected speech.  Plaintiffs' proposed

injunctive relief would also require Defendants to redraft their

Specifications to exclusively grant Defendants the right to

install and service SPS.  See Compl. ¶¶ (c), (d).  The proposed

relief has not been established to be in the public interest, as

it would foreclose the possibility of competitive bidding for

door safety services.  The proposed relief would also

inappropriate interfere with the Defendants' right to modify the

Specifications and to deny Plaintiffs, at Defendants'

discretion, the exclusive right to provide door safety services.


        Moreover, the Complaint cannot be fairly read as

alleging that Plaintiffs have no adequate remedy at law to

address their injury.  Plaintiffs contend that equitable relief

is appropriate as the retaliatory action amounts to a

deprivation of Plaintiffs' livelihood.  Pls.' Mem. in Opp'n 17.

However, Plaintiffs do not allege that they can only provide

their services to Defendants.  In the absence of the requested

equitable relief, Plaintiffs may still sell their services to

other agencies within the municipality, the state, or the
country, not to mention to private customers requiring their
services.  If, as Plaintiffs assert, they have been deprived of
the opportunity to bid on installing SPS in approximately 500
schools, and have further been deprived of the opportunity to
bid on servicing, then a monetary award representing Plaintiffs'
lost fees can be calculated.


**Conclusion**

        Upon the conclusions set forth above, Defendants'
motion for judgment on the pleadings is granted and the
Complaint is dismissed with leave given to replead within
twenty-one days.


        It is so ordered.

New York, NY
~~October~~ November 3 , 2014

ROBERT W. SWEET
U.S.D.J.

24