UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

GYM DOOR REPAIRS, INC. and SAFEPATH
SYSTEMS LLC,

                   Plaintiff,

   -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
DENNIS M. WALCOTT, as Chancellor of the
New York City Department of Education,
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, THE BOARD OF TRUSTEES OF THE
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, THE CITY OF NEW YORK,
JOHN T. SHEA, as chief Executive Officer
of New York City Department of
Education Division of School Facilities,
VOLKERT BRAREN, as Director of Program
Management of NYCDOE, CHRIS COYLE, as
Construction Project Manager of New York
City Department of Education,
CHRIS D'ALIMONTE, as Borough Contract
Manager of New York City Department of
Education, THOMAS FANIZZI, as Manhattan
Maintenance Planner of New York City
Department of Education and Division of
School Facilities and JOHN DOE NUMBERS 1
through 5, whose names are not presently
unknown, as agents, servants and employees
of THE CITY OF NEW YORK,

                Defendants.

------------------------------------------X

12 Civ. 7387

OPINION



A P P E A R A N C E S:

      Attorneys for Plaintiffs

      FORD & HARRISON, LLP
      100 Park Avenue, Suite 2500
      New York, NY 10017

By:  Eric Su, Esq.

Attorneys for Defendants

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street, Room 5-180
New York, NY 10007

By:  Scott Glotzer, Esq.


**Sweet, D.J.**

Defendants, New York City Department of Education ("DOE"), New York City School Construction Authority ("NYCSCA"), The City of New York (the "City"), The Board of Trustees of NYCSCA, Dennis M. Walcott (collectively "Municipal Defendants"), and John T. Shea, Volkert Braren, Chris Coyle, Chris D'Alimonte, Thomas Fanizzi, as employees of DOE (sued only in their official capacities) ("Individual Defendants" and, together with Municipal Defendants, "Defendants"), have moved to dismiss the operative complaint of plaintiffs Gym Door Repairs, Inc. ("GDRI") and Safepath Systems LLC ("SSL" and collectively, "Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Upon the conclusions set forth below, the motion is granted in part and denied in part.

2

**Prior Proceedings**

A detailed recitation of the facts of the underlying case is provided in this Court's opinion dated November 3, 2014, which addressed Defendants' motion for judgment on the pleadings with respect to Plaintiffs' initial complaint. See Gym Door Repairs, Inc. v. New York City Dep't of Educ., No. 12 CIV. 7387, 2014 WL 5569970, at *1 (S.D.N.Y. Nov. 3, 2014) (hereinafter, the "November Opinion"). Familiarity with those facts is assumed.

In the November Opinion, this Court held that Plaintiffs had adequately pled a First Amendment Retaliation claim, but that they had failed to establish municipal liability under Monell and its progeny in the initial complaint. 2014 WL 5569970, at **3-8. The Court also noted that the Second Circuit had affirmed its earlier dismissal of Plaintiffs' procedural and substantive due process claims in the initial complaint. Id. at *1. Subsequently Plaintiffs filed an Amended Complaint ("AC"), on the basis of which Defendants filed the instant motion.

The AC contains two causes of action: violations of Plaintiffs' procedural and substantive due process rights and a claim of relation, in violation of 42 U.S.C. § 1983; and

3

violation of Plaintiffs' First Amendment Rights.  AC ¶¶ 90-101.
As noted above, the due process claims were previously
dismissed, and that dismissal was affirmed by the Second
Circuit.[1]  Consequently, this Opinion addresses the disputed
issues stemming from Plaintiff's First Amendment claim.[2]

The Defendants' instant motion was heard and marked
fully submitted on March 25, 2015.

**The Applicable Standard**

Under Rule 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)).  Plaintiffs must allege sufficient
facts to "nudge[ ] their claims across the line from conceivable
to plausible."  Twombly, 550 U.S. at 570.  Though the court must

---

[1] Defendants' motion to dismiss those claims, which appears to be unopposed by
Plaintiffs, is therefore granted.  Compare Defs.' Mem. in Supp't 15-17 with
Pls.' Mem. in Opp'n 4-5.

[2] Since Plaintiffs acknowledge they are not presently asserting a patent or
copyright infringement claim, the portion of Defendant's motion relating to
such a claim is not addressed.  See Pls.' Mem. in Opp'n 9 fn. 4; Defs.' Mem
in Supp't 17-18.

accept the factual allegations of a complaint as true, it is
"not bound to accept as true a legal conclusion couched as a
factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly,
550 U.S. at 555).

Section 1983 "does not itself provide substantive
rights, but in fact offers a method for vindicating federal
rights elsewhere conferred." Humphrey v. County of Nassau, 06-
CV-3682, 2009 WL 875534, at *17 (E.D.N.Y. Mar. 30, 2009)
(internal quotations omitted) (citing Patterson v. County of
Oneida, 375 F.3d 206, 225 (2d Cir. 2004)); City of Oklahoma City
v. Tuttle, 471 U.S. 808, 816 (1985); Sykes v. James, 13 F.3d
515, 519 (2d Cir. 1993).  In general, "Section 1983 provides a
cause of action for the 'deprivation of any rights, privileges,
or immunities secured by the Constitution and laws' by any
person acting 'under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory.'"
Gomez v. Toledo, 446 U.S. 635, 638 (1980).

**The Monell Elements Are Met**

As noted in the November Opinion, Plaintiffs must
satisfy the elements under Monell v. Dep't of Soc. Servs. of

City of New York, 436 U.S. 658 (1978) in order to make a claim
against Defendants here.  See November Opinion, 2014 WL 5569970,
at *5 (citing Friel v. Cnty. of Nassau, 947 F. Supp. 2d 239, 256
(E.D.N.Y. 2013) (conducting a two-tier analysis whereby both the
First Amendment retaliation elements and the Monell requirements
must be met in a Section 1983 claim); Kilduff v. Rochester City
Sch. Dist., 10-CV-06387, 2014 WL 4659324, at *5-6 (W.D.N.Y.
Sept. 16, 2014) (holding that a valid constitutional law claim
against a municipality requires both the elements of the claim
as well as the Monell requirements to survive a motion to
dismiss); cf. Segal v. City of New York, 459 F.3d 207, 219 (2d
Cir. 2006) (holding that "[b]ecause the district court properly
found no underlying constitutional violation, [it need not]
address the municipal defendants' liability under Monell" when
dismissing a Section 1983 claim).  As Individual Defendants are
sued in their official capacities, the Monell requirements apply
equally to them.  Odom v. Kerns, 99 CIV. 10668, 2000 WL 1229849,
at *2 (S.D.N.Y. Aug. 29, 2000) (citing DeCarlo v. Fry, 141 F.3d
56, 61 (2d Cir. 1998) (a "claim against a municipal officer
acting in his official capacity is equivalent to a claim against
the municipality")).

To satisfy Monell: "a plaintiff must . . . show two basic elements: (1) the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officers and (2) a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights." Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (internal quotations and citations omitted).

In order to prove the existence of a policy or custom under Monell, Plaintiffs must sufficiently plead one of the following: (l) the existence of a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690-91; (2) that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision which caused the alleged violation of Plaintiffs' constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v.

7

Praprotnik, 485 U.S. 112, 127-30 (1988) (plurality opinion);

Sorlucco v. New York City Police Dep't, 971 F.2d 864,871 (2d

Cir. 1992); or, if liability is based on a claim of failure to

train or supervise, that (4) "the failure to train amounts to

deliberate indifference to the rights of those with whom

municipal employees will come in contact." City of Canton v.

Harris, 489 U.S. 378, 388 (1989); Walker v. City of New York,

974 F.2d 293, 297-98 (2d Cir. 1992).


          Plaintiffs contend that they satisfy the second Monell

element, i.e., that the Individual Defendants, officials

responsible for establishing final policy with respect to the

subject matter in question, took action or made a specific

decision which caused the alleged violation of Plaintiffs'

constitutional rights.  Pls.' Mem. in Opp'n 6-7 (citing several

cases, including Monell and Pembaur, for the proposition that

municipal liability can arise due to the course of conduct of a

municipal decision-maker with final policy-making authority).


          Federal courts do not apply a heightened pleading

standard in civil rights cases alleging municipal liability

under Section 1983.  Leatherman v. Tarrant Cnty. Narcotics

Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  At

8

the pleadings stage, it is sufficient for the complaint to
allege facts suggesting that Defendants may be determined to
have final policymaking authority as a matter of law.  Saenz,
2008 WL 2735867, at *3; see Tekula v. Bayport-Blue Point Sch.
Dist., 295 F. Supp. 2d 224, 234 (E.D.N.Y. 2003); see generally
Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d
Cir.1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-236
(1974)) (holding that the issue to consider is not whether a
plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims).

        However, even at the pleadings stage, a complaint must
contain allegations that the defendant-official had final policy
making authority in order to subject the municipality to
liability.  See Schwab v. Smalls, 435 F. App'x 37, 40 (2d Cir.
2011) (affirming the district court's dismissal of a § 1983
claim where the complaint contained little more than a "vague
assertion" that defendants had final policymaking authority).
It is ultimately the plaintiff's burden to establish, as a
matter of law, "that [an] official had final policymaking
authority in the particular area involved . . . .  It does not
suffice for these purposes that the official has been granted
discretion in the performance of his duties.  Only those

municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (internal quotations and citations omitted).

      Plaintiffs make several allegations regarding the Individual Defendants' policy-making conduct generally, without identifying the individual policy-maker in question.  For example, Plaintiffs allege that "the Individual Defendants directed contractors engaged to perform school construction and improvement work . . . to 'never use' Plaintiffs' services." See AC ¶ 63; see also AC ¶¶ 74-75, 77-80 (alleging, inter alia, that: (1) a lower-level municipal employee was instructed not to use Plaintiffs for SPS installation and maintenance; (2) Defendants instructed general contractors to not pay Plaintiffs; (3) SPS was removed from Defendants' specifications).  This, according Plaintiffs, amounted to Plaintiff's de facto debarment.  See id. at ¶ 63.  Plaintiffs further allege that Defendants organized trainings to teach electricians how to bypass Plaintiffs' Safe Path System, in violation of regulations prohibiting such bypasses.  Id. at ¶ 64.  Plaintiffs further allege that Individual Defendants Coyle, D'Alimonte, Fanizzi had instructed general contractors not use Plaintiffs' services.

See id. at ¶¶ 68-69.  Specifically, Plaintiffs allege that

"Coyle, Fanizzi and D'Alimonte regularly required the general

contractors to use the subcontractors handpicked by them and/or

Defendants Shea and Braren to perform work relating to the Safe

Path System and folding partitions," and that "the Individual

Defendants had maintained a practice that regularly and

systematically required Defendants' general contractors to

engage specific subcontractors . . . [thereby] also

maintain[ing] a practice of singling out subcontractors and

vendors that these Individual Defendants did not want the

general contractors to use."  Id. at ¶¶ 59-60.  Finally,

Plaintiffs allege that:

> The afore-described acts of Defendants,
> including those of Individual Defendants
> Shea, Braren, Coyle, Fanizzi and D'
> Alimonte, demonstrate that Defendants
> exercised authority and privilege aimed to
> unlawfully retaliate against Plaintiffs for
> their exercise of their rights under the
> First and Fourteenth Amendments.  Their
> conduct further demonstrate that these
> Defendants, including Individual Defendants,
> had the policy making authority in
> maintaining discriminatory, wrongful and
> unlawful procurement practices that (1)
> required Defendants' general contractors to
> engage in similar retaliatory conduct
> against Plaintiffs and (2) obligated
> Defendants' subordinates to carry out,
> implement and enforce unlawful practices and
> policies.

Id. at ¶ 76.

11

As noted above, "[a]t the pleadings stage, it is
sufficient for the complaint to allege facts suggesting that
Defendants may be determined to have final policymaking
authority as a matter of law." Saenz, 2008 WL 2735867, at *3.
However, "an allegation of municipal policy or custom would be
insufficient if wholly conclusory." Ricciuti v. N.Y.C. Transit
Auth., 941 F.2d 119, 124 (2d Cir. 1991). Moreover, the alleged
custom must be permanent, and must be the basis for the
plaintiff's constitutional deprivation. See Ambrose v. City of
New York, 623 F. Supp. 2d 454, 464 (S.D.N.Y. 2009).


Defendants contend that Plaintiffs have not identified
which Individual Defendant instructed which general contractor
to not use Plaintiffs. See Defs.' Mem. in Supp't 12. However,
Plaintiffs explicitly allege that the Individual Defendants used
their policy-making authority to in effect ban the Plaintiffs
from providing their services to the City. See AC ¶ 76.
Several general contractors allegedly received warnings or
direct instructions from the Individual Defendants to cease
using Plaintiffs for SPS installations and maintenance or to
stop paying them for work already performed. See generally AC
¶¶ 69-70, 72-80. Defendants rejected at least one general

12

contractor for proposing to partnering with Plaintiffs.  Id. at
¶ 70.  SPS was removed from the City's gym door safety system
specifications.  Id. at ¶ 80.  These allegations rise above the
"vague assertion[s]" of final policymaking authority that would
justify dismissal at this stage.  See Schwab, 435 F. App'x at
40.


        Defendants also contend that "a plaintiff cannot infer
a policy solely from the alleged violations of his own civil
rights."  Defs.' Mem. in Supp't 7 (quoting Valtchev v. City of
New York, No. 06 CIV 7157(NRB), 2009 WL 2850689, at *12
(S.D.N.Y. Aug. 31, 2009).  The language in Valtchev is derived
from Anderson v. City of New York, 657 F. Supp. 1571, 1576
(S.D.N.Y. 1987), which is in turn based on Justice Rehnquist's
plurality opinion in Oklahoma City v. Tuttle, 471 U.S. 808, 823-
4 (1985).  In Tuttle, Justice Rehnquist wrote that a single
incident of unconstitutional activity was insufficient to
establish the existence of a policy "unless proof of the
incident includes proof that it was caused by an existing,
unconstitutional municipal policy, which policy can be
attributed to a municipal policymaker."  Id. at 824.  In Tuttle,
as Anderson, the plaintiff was pointing to a single incident of
police misconduct as an indication that the municipality had

13

failed to adequately train its officers.  Id. at 821; Anderson

657 F. Supp. at 1575; see also Valtchev, 2009 WL 2850689, at *12

(holding that "plaintiff has provided no evidence of a concerted

"policy" or "custom" by school officials to violate his Fourth

Amendment rights.").  Here, Plaintiff's allegations, if true,

demonstrate a pattern of instructions designed to retaliate

against Plaintiffs for their First Amendment speech.  Moreover,

"[s]o long as the single challenged act was the decision of a

municipal policymaker, the municipality could be held liable."

Walker, 974 F.2d at 296.  Consequently, dismissal on this basis

is not justified.


         Defendants also point to what can be characterized as

contradictions between the claims pled by Plaintiffs and the

factual allegations underlying those claims.  See generally

Defs.' Mem. in Supp't 7-12.  None of these arguments are

sufficiently persuasive to justify dismissal of the AC.

Defendants contend that Plaintiffs improperly rely upon "second-

hand rumors and supposition" in alleging the existence of a

discriminatory policy.  Id. at 9.  However, to adopt Defendants'

position would be to dismiss all claims where the plaintiff is

not directly informed by the defendant that the defendant has

instated an unconstitutional retaliatory policy.  Defendants

14

also contend that Plaintiffs alleged that they were the
"exclusive" SPS subcontractors from 2003 to 2011 and yet that
they were denied contracts during that time period.  See Defs.'
Mem. in Supp't 8.  Plaintiffs' allegations are not
contradictory: the AC can be fairly read to allege that
Plaintiffs were denied the exclusive subcontractor jobs that
they contend they were due given their exclusive status.

    Finally, Defendants contend that an email exchange
referenced in the AC contradicts Plaintiffs' allegation of a
retaliatory policy.  See Defs.' Mem. in Supp't 11 (referencing
Exhibit 1 to Declaration of Scott Glotzer in Supp't of Defs.'
Motion to Dismiss dated January 21, 2015).  The email at issue
was sent by a City employee to Plaintiffs' employee and stated,
in part, that the City employee "was told that someone at
[Plaintiffs'] company was critical of [Defendants'] gym doors
maintenance" and "was even told NOT to use [Plaintiffs]."  AC
Ex. 4.  Defendants contend that the email exchange as a whole
suggests that Plaintiffs continued to be used as subcontractors
by Defendants and therefore did not suffer harm.  See Defs.'
Mem. in Supp't 11-12.  At the pleadings stage, "[t]he
appropriate inquiry is not whether the plaintiff might
ultimately prevail on his claim, but whether he is even entitled

to offer any evidence in support of the allegations in his complaint." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Whether discovery will establish that Plaintiffs did not suffer a cognizable harm or whether a finder of fact will choose to credit Defendants' interpretation of the email exchange are questions not resolvable at the pleadings stage.  Plaintiffs' interpretation of the email is not so clearly contradicted by the evidence as to warrant dismissal of the claim.

Since Plaintiffs alleged a concerted policy of discrimination against them, instated by the Individual Defendants pursuant to their final policy-making authority, these allegations are sufficient to satisfy Rule 8's notice pleading requirement.  Consequently, the First Amendment Monell claim survives.

**NYCSCA Remains a Defendant**

Defendants contend that Plaintiffs failed to plead a viable claim against NYCSCA.  See Defs.' Mem. in Supp't 18-19. The AC contains allegations that "Defendants removed the Safe Path System from the [NYCSCA's] Specifications . . . in furtherance of its [sic] retaliatory actions against

16

Plaintiffs." AC ¶ 79. Plaintiffs also alleged that they were told "that Defendants were considering removing the Safe Path System from the Specifications." Id. at ¶ 70.

Defendants contend that the "Plaintiffs fail to plead any connection whatsoever between their speech critical of the DOE, DOE's purported retaliation, and the revised SCA's construction specifications." Defs.' Reply Mem. 8. However, the AC can be fairly read to include NYCSCA in the allegation that "Defendants" removed SPS from the Specifications as retaliation for Plaintiffs' speech. See AC ¶ 70; see also id. at 1-2 (defining the term "Defendants" to include NYCSCA and its Board of Trustees).

Defendants further contend that email records which Plaintiffs offered as support for their allegation that DOE and NYCSCA collaborated in establishing the Specifications do not support that contention. Defs.' Mem. in Supp't 18-19 (referencing Declaration of Eric Su in Opp'n to Pls.' Motion to Dismiss, Exs. 1-2). Though a finder of fact may agree with Defendants regarding the import of the emails, such weighing of evidence is not appropriate at this stage in the litigation. Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1405

17

(S.D.N.Y. 1996) ("The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.") (internal citations and quotations omitted).

Since NYCSCA is among the defendants accused of having discriminated against Plaintiffs, and because Plaintiffs explicitly allege that NYCSCA altered its Specifications as retaliation for Plaintiffs' speech, NYCSCA remains a defendant.

**Conclusion**

Upon the conclusions set forth above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' First Amendment Claim survives, and NYCSCA remains a defendant.  Defendants' other requests for dismissal are granted.

It is so ordered.

New York, NY
June 22, 2015

_____

ROBERT W. SWEET
U.S.D.J.

18